Appellant v. Eric D. Wilson, Warden Ms. Taramina for the Appellant, Mr. Smith for the Appellee Ms. Taramina, for Petitioner James Head, I'd like to reserve two minutes for rebuttal. Until December 23, 2009, D.C. Code Section 23110G was used by state habeas respondents and courts in this circuit to deny defendants convicted in D.C. Superior Court a federal forum for review of any and all claims directly challenging their convictions and sentences. It was not until 40 years after Section 23110 was enacted that this court held for the first time in Williams v. Martinez that Subsection G of the statute did not, in fact, divest federal courts of jurisdiction over a D.C. prisoner's claim of ineffective assistance of appellate counsel. What decision made it clear before Williams that you could not file a 2254 petition in federal court based on ineffective assistance of appellate counsel? There had been no petitions. This court and the district court had never actually exercised jurisdiction over a federal habeas petition of a D.C. prisoner challenging their sentences or their convictions under 2254. So the court had never actually ever exercised jurisdiction in that circumstance. Now, the summary opinion that I could find was the Collier case in 1999. And I think that that's even stronger evidence that this court took the way that this court took that issue. It summarily rejected Mr. Collier's petition. It did so without argument. That was after he used the procedure of the recall of the mandate. Yes, Your Honor. Which is not 23110. What case in our circuit has been an impediment? Well, Your Honor, the fact that Mr. Collier did use the recall of the mandate procedure is actually strong evidence that there was still confusion after Streeter. If he had not used the recall of the mandate procedure, then the court would have dismissed his claim because he had not exhausted his state court remedies. Why was there confusion after Streeter? Streeter said, do exactly what Collier did, and he did it. Right, and Collier did it, and the court dismissed the case for lack of jurisdiction. So in that sense, Streeter did not establish what Williams established. Collier continued to deny jurisdiction to these types of claims even after they had been exhausted in state court. You've taken a one-paragraph ruling that says he followed the appropriate procedure, which was recall of the mandate. He lost that. The failure to win in that court, meaning the court of appeals of the local court of appeals, does not make it an effective remedy. I don't see how that helps at all, and leaving aside the fact that it's unpublished in the one-paragraph, Streeter, if anything, if our precedent before Williams indicated anything, it was that you have to go by a recall of the mandate because 23-110 has no applicability to an effective assistance of appellate counsel. Yes, Your Honor, but Collier is directly at odds with the Williams decision. The state of the law now has nothing to, the ineffectiveness or inadequacy of the recall of the mandate procedure is not relevant at all to the calculus. 23-110G only divests federal courts of jurisdiction for claims that could be brought under 23-110. Now, claims of ineffective assistance of appellate counsel cannot be brought under 23-110. So the 23-110G's jurisdictional limitation is not applicable in this situation. So as of Williams, the court has recognized that there is jurisdiction to hear claims of ineffective assistance of appellate counsel, and in fact, those who do not use the recall of the mandate procedure cannot bring their claims here in federal court because they will be deemed to have not exhausted their state court remedy. So that is what they must do. And at that point, once the recall of the mandate procedure is in place, it's that decision that this court reviews in habeas review. Now, Collier was decided in 2001, I believe, right? I believe it was 1999, but Your Honor probably has it in front of him. That may be right, 1999. But even assuming that Collier was something that told Mr. Head he could not bring this claim, he did not have any petitions pending between, it looks like, 1994 and 2001. So when AEDPA became effective as to him, well, AEDPA's passed in 1996, I guess what I'm saying is he didn't file anything during the time period where he had to file something under AEDPA challenging or in federal court bringing this ineffective assistance of appellate counsel claim. So unless Streeter was something that was the impediment, you can't really use Collier as the impediment because Collier comes too late. You see what I'm saying? Yes, Your Honor. Except that the issue here is that Williams really, well, one, Mr. Head didn't file his petition because there was no, at that time, the court had never recognized jurisdiction for this type of claim. But Ms. Termina, I know you have two points and I want you to be able to get to them, but you seem to have flipped the presumption. If there is no law making clear the path, as Williams subsequently did, the absence of law I don't think has been held to be an impediment, an impediment cognizable under the statute. And I wonder if you have any authority of any circuit court to the contrary. So the question is not did he lack a roadmap, which Williams provided, but what can you point to that was actually an impediment and Collier was a non-precedential decision. In fact, Mr. Williams went ahead and, lo and behold, succeeded without impediment. So there's really a question, I think, for you to identify what the impediment was. Yes, Your Honor. Well, there's two things. Mr. Williams actually did not present this argument at all in his original petition. He brought a claim of ineffective assistance of appellate counsel. He, in fact, argued that this was not a 2254 petition, it was a 2241 petition, and that therefore 2254 was inadequate and ineffective. His argument was somewhat convoluted. It was this court that saw the petition, identified that there might be an issue, appointed counsel for Mr. Williams, and then counsel argued brought this issue up to the court. So Williams was not Williams. He didn't really identify this issue for the court. No one had argued this issue before the court, and I think that that is extremely important. Also, I want to get back to the fact that Collier, because it was a summary decision, if there was no argument in that case, also the court didn't ask the government or order the government to respond to Mr. Collier's petition. It merely summarily rejected the argument based on a lack of jurisdiction without any argument, any government response. There was no government response in that case. So if we're talking about futility, it really, at that point in time, as late in that point in time, it was useless. Are we talking about futility or are we talking about an impediment? So I guess it would still be helpful to us, I think, if you focus on what are you pointing to as the impediment. Well, the impediment is the fact that the court did not recognize that 23110G did not impose a jurisdictional bar. And it's not just this court, but also this was the defense that all of the state habeas respondents were using in response to the petitions that they were ordered to respond to. So in that sense, the state habeas respondents were using 23110 to impede the review of the merits of any ineffective assistance of appellate counsel claims. And the courts were accepting that as the impediment. So the impediment was 23110G. So that's what I'm trying to get to. Was the impediment the statute or was the impediment this court? Well, the impediment was this, well, not only this court's, I don't want to say interpretation of the statute, but the way that it used this statute. And not just this court, but, again, it's the state habeas petitioners that were, sorry, respondents that were using. But ruling from this court was the impediment then? 23110G is the impediment. The fact that this court, at no time prior to Williams, had exercised jurisdiction and, in fact, had, and I think it's routinely, summarily rejected these claims without even considering its jurisdiction was the impediment. Okay. So if 23110G was the impediment, that was passed by Congress, correct? 23110G was passed by Congress, but it is a D.C. code. It is a D.C. state law. So this action by Congress is a state action? Well, it's a state law. What authority do you have for the proposition that an act of Congress is a state action? Well, D.C. is treated as a state, Your Honor. So in that sense, it's that authority that would be analogous to this situation or be transferred, sorry, to this situation. But it's not D.C. acting. It was Congress passing a statute applicable to the district. Yes, but it is state, it's still state law. And in that sense, because we're relying on, because the court was relying on state law, it really is, and because D.C. is unique in that sense where Congress can pass a state law, we would never really be in this situation in another jurisdiction. But we are, and D.C. is considered a state, and D.C. code offenses are considered state law offenses. Otherwise, they would be able to be prosecuted in federal court, and they're not. So in that sense, I think that the state action aspect is satisfied. So what would be your authority for that? What case would you cite? Well, again, Your Honor, if it's not in this, if this circuit actually hasn't ruled upon it, then there would be no case law, because this is not something that would come up in, let's say, the Seventh, Sixth, or any other circuit. But by analogy, is there, or even under equitable tolling, something that shows? Well, with respect to equitable tolling, there's no state action requirement. So that is... But in terms of looking at that kind of enacted law, which is itself part of the mechanism for bringing the habeas as something that's the obstacle? Well, there are the cases involving... It's not an interpretation of state law. There are the cases involving interpretation of the, well, circuit law interpreting the procedures and the time limitations where the circuit courts have, and they're cited in my brief, where they have interpreted incorrectly the 2244 requirements or 2255 requirements. And they're based on a reasonable reliance on that precedent. The defendant failed to file their, his or her petition on time, and the courts have granted equitable tolling in those situations. I wonder if on equitable tolling you could address the Whiteside decision that the Fourth Circuit entered since the briefing. So with respect to Whiteside, I want to point out that it is still, even though it has been vacated, it is still the considered opinion of at least three judges on the Fourth Circuit. So the, I believe, Judges Gregory and Davis were on the original panel. They filed a dissent to the per curiam, and then the dissent picked up Judge Wynn. And... Well, how many judges are on the other panel? No, absolutely. I don't see the significance of that. Absolutely. The only significance is that it is not, it's still a split opinion, and that there are three Circuit Court judges that believe that Whiteside should have been granted equitable tolling in that case. That is the only significance of that. But in addition, Whiteside is also distinguishable. It involved a challenge to the defendant's career offender status, where based on Circuit law, it's now clear that one of the underlying convictions is no longer a qualifying conviction for a career offender, and the defendant had never challenged that on direct appeal and was now trying to use the new Circuit precedent to change his sentence after the time limit had already expired. So Whiteside is dealing with substantive law, a change in substantive law. Here we're dealing with jurisdiction, which really is an access to the court issue. And that is precisely whether, I mean, if we're looking simply at statutory tolling, if you look at 2244D1B, really what that provision is aimed at preventing is obstacles to court access. And jurisdiction goes to the heart of court access, because there is no meaningful access to the court if the court does not exercise its jurisdiction, which it had not done previous to Williams. But in that sense, Whiteside is distinguishable because it was a change in substantive Circuit law, which does do a head run into 2244D1C in a different way than in this case. This case does not conflict with 22D1C, which is the exception for changes in substantive law. Because, again, I made this point in the brief, the substantive claim that Mr. Head is bringing here is ineffective assistance of appellate counsel. So that is not a new right that he's attempting to assert. Can you address the Menominee Tribe case? Yes. Yes, Your Honor. That case is very similar to Minter, the Minter case out of the Fourth Circuit, which preceded the Whiteside case. And in that case, I think it's extremely different because the reason that, well, first and foremost, it's a civil case involving civil penalties. It does not involve a constitutional right, such as a state prisoner's right to petition for a writ of habeas corpus. And it's an equitable tolling case, so it doesn't apply to your statutory argument. Yes, it doesn't apply to my statutory argument. But even with respect on its face, if we were to take it on its face, the plaintiffs in that case, or the defendants, I suppose, I don't know in the civil context where they were, but they hadn't exhausted their administrative remedies. And they hadn't done so because they said, well, we're essentially the administrative agency is not favorable to us, so we'll just go straight to federal court. That's not what happened here. Because there's no, and just as in Minter, there's no reason, I mean, you must exhaust your state court or administrative remedies in order to have something to appeal to the federal court. If you're not unsuccessful. I think the thing that feels similar is where there are some shoals, or some headwinds facing a litigant, and so there's not a clear roadmap to success, the litigant nonetheless has to file and preserve and bring the challenge and may be defeated in one court and the next court. But in order to really say I was prevented, it has to be something more than just, gee, the law doesn't look good for me. No, that may be true in this substantive law arena. But again, this is jurisdiction where essentially the court is saying, stay out. You're not, the doors are closed to you here. So that's one distinction. Second, in that case, and in Minter, the petitioners were relying on a lower court's precedent, interpretation of federal, in Minter, for example, they were relying on a state court's interpretation of federal law and basically saying we're not going to, it's futile for us to bring this claim in state court. But you have to lose in state court in order to get to federal court review. Otherwise there would be no reason for federal court review. But in this sense, I really do think that the distinction does lie in the fact that this was a jurisdictional bar, and to be clear, in cases such as Boozley and in Whiteside, the courts in both of those cases make clear that the arguments that Simmons eventually won on and that Bailey eventually won on for Boozley were arguments that different petitioners were making routinely. They were not novel arguments. They were routine arguments that should have been brought and should have been exhausted. Let me just anticipate what I think we'll hear from the government before we let you sit down, and that is that the government will say when 23-110 was passed and approved by the Supreme Court, all that really was made clear was that the habeas jurisdiction of the Superior Court would be deemed effective, just as effective as if a habeas could be filed in federal court. But once the D.C. Court of Appeals said, and there was a safety valve, of course, that said that in 23-110g that said that if there wasn't really an effective remedy in Superior Court, then you could bring a habeas petition in federal court. So once the D.C. Court of Appeals interpreted 23-110 to say, well, you can't bring a habeas in Superior Court for ineffective assistance of appellate counsel, but you can file this motion to recall the mandate, I think that what the government is basically arguing is that, you know, that's saying that that's not really foreclosing anyone from making an argument that that procedure, that motion to recall the mandate procedure, isn't an effective procedure. And so as far as equitable tolling goes, why should there be equitable tolling when, you know, he could have made that argument, and that's an obvious argument to be made because that's right there in the statute too, right? It sounds, now it sounds like it's an obvious argument to make. But no one made it. It was a novel argument, and novelty is something that the Supreme Court in Boosley did recognize could be a potential basis for equitable tolling. If this truly was not an argument that litigants were making at the time because it seemed so very clear that it wouldn't be successful, and in fact it had, I mean, generally there was, I can't say that that argument wasn't successful because it wasn't made. So it does seem obvious now. But like I said, Williams did not make the argument. It was essentially raised, not explicitly, but the opportunity was given for the argument to be made by this court. But Williams did not make that argument. It was not previously made. And I think it's very important, extremely important, that the government strenuously opposed the petitioner's argument in the Williams v. Martinez case and said that absolutely 23.110g did divest jurisdiction to hear ineffective assistance of counsel claims. And when they lost initially in Williams v. Martinez, they asked for rehearing en banc. And the government does not do that, and in fact cannot do that lately. I believe that they need authority from the Solicitor General's office in order to ask for rehearing en banc. So they felt very strongly that Williams was not as obvious as we all see it now. It was not obvious to them. That was not their argument in their briefs in Williams. I know that that's going to be their argument today, but it wasn't their argument in their briefs. And they did ask for a rehearing en banc, which I think is a very significant sign that they felt strongly that Williams was wrongly decided and, again, not so obvious. And, Your Honor, I looked. I think it's still confusing to some district courts. I reviewed how the district courts were interpreting Williams after the fact, and there's at least one district court who has dismissed a petition for an ineffective assistance of counsel petition where the petitioner exhausted his remedy in state court. He filed a motion to recall the mandate, lost, and then brought his petition here in federal court, and the court ruled that the recall the mandate procedure was not inadequate or ineffective, and that's after Williams. So it's confusing. It's still confusing. And, again, Boozley did recognize that novelty is a basis for equitable tolling, and I think that because no one had raised this issue, because it took 40 years from the enactment of 23-110 for this court to recognize that there is a claim that D.C. prisoners can bring here in federal court, I think that that's an exceptional circumstance. All right. We'll give you a couple minutes. Mr. Smith? I'd like you to address Streeter because my reading is for 40 years we haven't. I mean, Streeter is a roadmap. I mean, there hasn't been. Williams wasn't written on a clean slate. We had led the way in Streeter. I agree with that. I think the court could view Streeter as a roadmap. In fact, the Streeter opinion itself says, you know, we assume that once the DCCA does its portion of this case that in Streeter, this court didn't dismiss Streeter's petition. It held it in abeyance pending action by the DCCA. Well, Williams itself characterizes Streeter as having assumed that we do have jurisdiction. Go ahead. It did. In Williams, this court said Streeter anticipated the very sort of claim that Appellant is raising today. Appellant's argument is essentially the last argument he made was that the impediment to the filing of his petition was confusion or confusion about the state of the law, and I would submit that that simply contradicts the plain language of the statute. Well, that wasn't the position that the government took in Williams. That's correct, and we were wrong. And to the extent that we would acknowledge that there was some confusion, there was nothing that prevented Appellant from filing the claim that he filed in this case and that Williams himself. All the smart government lawyers were wrong, but Mr. Head should have figured that out. Well, he should have. Even though the smart government lawyers didn't figure it out. Well, that's correct. That's essentially what the statute requires, and that's also what equitable tolling requires. That's what the court in the Menominee Tribe case essentially said. Where the law is unclear, the burden is on the litigant to go forward and file the claim, to make the claim. The government was wrong, but Appellant is not bound by the government's view about the law. Appellant's actions should be governed by the law, and this court says what the law is. The government, the U.S. Attorney's Office's interpretation of the law is not what binds Appellant. So Appellant has got to act within the law as it exists. And this court in Williams said that Streeter, and it was very clear, it used the word anticipated. It said Streeter anticipated the sort of claim that Appellant is now raising. Williams himself raised that claim. Appellant has argued this morning that it was amicus on Williams' behalf. But amicus made that argument, and that argument succeeded. The plain language of the statute requires an impediment, and not just an impediment. The statute says an impediment that prevented the litigant from filing a claim or from making a claim. The impediment has to prevent or foreclose the claim. And in addition, there are other aspects of the statute's plain language that Appellant simply can't meet. There is no state action. This court's interpretation of a D.C. Code provision is not itself state action. And if the state action is the D.C. Code provision, that provision has remained the same since 1970. It hasn't changed. And again, as this court recognized in Streeter, or in Williams talking about Streeter, Streeter did provide a road map of sorts to raise this type of claim. In addition, there's no unlawful state action. Each of those are plainly requirements set forth in the statute, which Appellant cannot meet. I did want to briefly address Collier. As Judge Henderson indicated earlier, Collier is non-precedential. It's an unpublished, one-paragraph decision. It did not create the impediment, and Appellant hasn't argued that it did. Appellant's brief argues that this court's precedent was the impediment, but today Appellant's made the argument that the impediment to his claim was 23-110-G, the D.C. Code provision. And that provision, as I mentioned before, has not changed. Well, if we switch to equitable tolling away from the statutory argument, you cite Mentor for your statutory argument, but Mentor was also discussed equitable tolling, and it described equitable tolling as being reserved for those rare instances where, due to circumstances external to the party's own conduct, it would be unconscionable to enforce the limitation period against the party and gross injustice would result. Based on that, why hasn't Mr. Head met that standard, if that's the standard? Well, he simply hasn't, Your Honor. He was convicted in 1980 of a double homicide, and that long period of time passed before Appellant raised his claim. Appellant could have raised it following Streeter, for example. Streeter provided a road map of sorts, as Judge Henderson indicated earlier. And even if one could excuse Appellant from raising that claim prior to Williams, Appellant was not diligent. He still doesn't meet the test for equitable tolling because he still waited two-and-a-half years following this Court's decision in Williams to file the claim that's before the Court now. So he wasn't diligent. In addition— But when Williams came down, he had a petition pending, right? He had a 23-110—I'm sorry, not when Williams—when Williams was decided what year? Williams was decided in 2009. And wasn't his petition, I guess his fifth petition, still pending at that time? It was, and that argument goes—I mean, in part it goes to statutory tolling. It's provision D-2 says that when you have another habeas petition or its equivalent pending, the time is tolled, but that's a statutory tolling argument. And Appellant—I guess what the Court's referring to is Appellant sort of imported that into his equitable— Well, I guess what I'm saying is if he had filed a 22-54 petition the day after Williams came down, wouldn't the government say dismiss it because under 23-110 he's got one pending in Superior Court? I mean, he can't be in both places at the same time. I don't know. We may have made that—I don't know. We may have made that argument. But the burden is on Appellant to preserve his own arguments. He's got to file the petition in order to preserve his rights. And an additional response to your question, Your Honor, is that another element that excludes Appellant from the sort of extraordinary circumstance that would qualify for equitable tolling is the circumstance has got to be beyond the litigant's control. This Court made that clear in the nominee. It's also—is even in the language of the Holland Supreme Court decision. And this—what Appellant is arguing simply isn't beyond his control. He, like Williams, could have filed this claim, and that is at bottom a reason not to equitably toll the statutory limitations period here. Isn't the unpublished decision in Collier relevant to that point? Because if we're going to look at the equities of this and say, well, he should have known and he should have done what Williams did, well, if it were so clear, why did we issue this unpublished decision in Collier? We were obviously wrong. Sure. It could perhaps be relevant. But I would argue that this Court in Williams said that Streeter anticipated exactly this sort of claim. Streeter put Appellant on notice. Appellant's conviction was before Streeter. Streeter is 1982. Appellant was convicted in 1980. Streeter provided the roadmap that Appellant is looking for. And the fact that Appellant lacks a roadmap, this Court would— or I would argue that the Menominee Tribe case makes clear or at least suggests that lacking a roadmap or confusion about the status of the law is not sufficient to justify equitable tolling. I think that that is at bottom what the holding of the Menominee Tribe case is. And this Court's bound by that decision. Appellant's argued that that's distinguishable because it was a civil case. But it's applying the same equitable tolling test that's applicable in this case. That is the same test whether it's a civil case or a criminal case. There's two things I think that Appellant argues that are important distinctions between this and any of the other cases. One is that this is dealing with jurisdiction and not substantive law or a new, I guess, recognition of a new constitutional right. And second, that this is the Great Writ. And there are lots of cases that talk about the importance of the Great Writ and we treat it differently. So why aren't those two factors important here in trying to figure out how we should interpret equitable tolling? Well, I don't fully understand the distinction Appellant's making between the import of a jurisdictional versus a change in substantive law. I don't fully understand that. And I guess my response is that distinction has got to be wrong as it applies to Appellant's claim of ineffective assistance of appellate counsel because Williams made the same claim. This court exercised jurisdiction. That case went forward and resulted in the decision that Appellant now wants to use and claimed in his initial brief was the change in law that opened the door to his claim. So I don't fully, maybe I'm not understanding, I just don't fully appreciate the difference. And I don't believe that it's grounded in law in the way that Appellant has argued this morning. And as to the court's second point about the purpose of the Great Writ, it is a writ of last resort and it is an equitable remedy. But this court made clear in the Menominee Tribe case that it is also limited. It is extraordinary. And for the reasons that we've discussed this morning, Appellant simply hasn't met that high standard. In addition, in the Fourth Circuit's recent en banc white side decision, the en banc court explains at length why, essentially responds to your Honor's point. It says that although it is the Great Writ and although it is last resort, the petitioner in that case, white side, simply couldn't meet that test. And the court gave a number of different reasons. It distinguished Holland as being different from this case and from white side's case because Holland involved the situation where Holland really was prevented, literally prevented from filing a claim because not only was his own counsel ineffective, but the courts wouldn't accept pro se filings. So that's different from this case. And white side goes on to explain why were the court to look at change of law as sufficient to trigger equitable tolling, then that simply undermines the whole purpose of finality, the purpose of limitations periods in general. So I would point the court to the white side en banc petition as responding to that point. And also in this case, and it's not determinative, but unlike Williams, didn't the local court of appeals and all of these different motions and so forth, didn't it rule on his ineffective assistance of appellate counsel back in the early 90s on the merits? I'm sorry, you're referring to appellate this case and not... Yes, I mean in Williams, when they did the motion to recall the mandate in Williams, according to the concurrence, the local court of appeals denied it, gave no explanation, denied rehearing. So that was never heard, that Sixth Amendment claim was never heard on the merits by the local court. That is different here, isn't it? Didn't the local court of appeals, in denying the motion to recall the mandate, reach the merits of the Sixth Amendment claim? The local courts, the superior court and also the... Not the superior court, the court of appeals. The D.C. court of appeals has reached ineffective assistance of trial counsel and ineffective assistance of appellate counsel claims in this case, but we don't think it has reached the claim appellant is raising now. What's before this court right now is simply the tolling issue, but the merits claim that underlies this... The violation of the constitutional... Right. The D.C. court system has reached that issue generally, but not the specific claim appellant is raising here. Any more questions? All right. Thank you. We urge the court to affirm judgment of this court. Thank you. Does counsel have any time left? All right. Why don't you take two minutes? Just very quickly. I don't know what the basis of what the government's last representation is. I don't think that there is a basis to say that he did not raise the ineffective assistance of appellate counsel claims that he now raises here in the D.C.C.A. I think he did exhaust those claims and they're being brought here. That's something that would be litigated on a remand if this case were remanded. I didn't take him to be arguing that. I took him to be saying that you don't have a merits decision even from that forum on this issue. I think it's a summary denial, but I'm so sorry. I interpreted him saying that he did not bring the same claims there and here, so I do think that to the extent that there is an exhaustion issue, that would be something we would litigate on remand, I believe. I just want to address the fact that any number of times the government represented that Mr. Head could have been Williams. But, no, Mr. Head would have been Collier. If Mr. Head would have brought his claim earlier, he would have brought it earlier than Mr. Collier. Mr. Collier brought it in 1999, and it would have been summarily rejected without argument and without a government response, just as Mr. Collier's claim was. So in that sense, if Mr. Head had brought his claim, he would have been Mr. Collier. And the government continues or says numerous times that Streeter gave a roadmap or that this court indicated what it would do in Williams and Streeter, but Collier came after Streeter. So still this court was not ready to act on that roadmap if, in fact, Streeter was. Perhaps this court took the same position at that time that the government did in its brief in Williams, which was that Streeter provides, quote, no guidance in this situation, and that was the government's position in Williams. If there are no further questions, we simply ask for a remand for continued proceedings in this matter.
judges: Henderson, Pillard, Wilkins